IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-330-FL

| | | |
|---|---|---|
| FRANCIS SAM-KABBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| G4S SECURE SOLUTIONS (USA) INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (DE 19). Plaintiff responded in opposition, and the time for reply has passed. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff filed a complaint in Wake County Superior Court, on April 4, 2018. asserting employment discrimination claims against defendant, his former employer. Defendant removed to this court, and plaintiff filed an amended complaint on August 7, 2018. Plaintiff asserts a claim for retaliation and discrimination on the basis of national origin, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and a state law claim for wrongful termination. Plaintiff seeks compensatory damages, front pay, reasonable attorney's fees and costs, and trial by jury.

Defendant filed the instant motion to dismiss on August 8, 2018, asserting that plaintiff failed to exhaust administrative remedies and is barred by the doctrine of res judicata. In support of the

motion, defendant relies upon the following documents: 1) plaintiff's Equal Employment Opportunity Commission ("EEOC") charge of discrimination; and 2) state court documents in a case commenced by plaintiff on December 21, 2016 (the "December 2016 action"). Plaintiff responded in opposition on September 25, 2018, relying upon additional documents filed in the instant case in Wake County Superior Court. Defendant did not file a reply.

## STATEMENT OF FACTS

The facts alleged in the complaint[1] may be summarized as follows. Plaintiff is an "African-American male citizen whose national origin is Sierra Leonean, and, a citizen and resident of Raleigh, Wake County, North Carolina." (Compl. ¶ 1). Defendant is a Florida corporation in the business of providing "security services." (Id. ¶ 2). Defendant hired plaintiff as a Security Officer in or around October 2010, and plaintiff received above average performance appraisals for five years.

"On or around July, 2014, [p]laintiff was apprised that a new position of Shift Supervisor would be filled from the then existing security staff located in Morrisville, North Carolina." (Id. ¶ 11). "Plaintiff inquired of his Site Supervisor, Tyron Bullock (American), as to the process for applying for the new position." (Id. ¶ 12). According to plaintiff, "Bullock intentionally provided [p]laintiff an incorrect link to the website from which to apply online." (Id. ¶ 13). "Despite being given an incorrect link, [p]laintiff timely applied for the position he knew he was qualified for." (Id. ¶ 14). Bullock interviewed plaintiff for the position on or around July 17, 2015. In or around mid-August, 2015, "[p]laintiff learned that the Shift Supervisor's position had been filled by a lesser qualified American co-worker." (Id. ¶ 16). "On or around August 13, 2015, [p]laintiff inquired of

---

[1] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to the amended complaint filed August 7, 2018, (DE 18), unless otherwise specified.

Bullock about the position he believed he was wrongfully and illegally denied." (Id. ¶ 17). "As a result of questioning Bullock about the denied promotion, Bullock verbally insulted [p]laintiff." (Id. ¶ 18). "That same day, [p]laintiff contacted Michael Fulks, General Manager, and reported his confrontation with Bullock." (Id. ¶ 19). "On or around August 19, 2015, [p]laintiff received an email from Bullock informing him of a meeting with Fulks on August 20, 2015." (Id. ¶ 20). According to plaintiff, "the email was not intended for [p]laintiff, but inadvertently sent to [p]laintiff as it also contained Bullock's communication to Fulks regarding [plaintiff's] requested meeting with him." (Id. ¶ 21). "In the email, Bullock avers to Fulks, 'I have no earthly idea why he wants to see you. He is really becoming a cancer, sorry to put it that way. I advise you to listen very carefully so you can understand him. Good Luck!'" (Id. ¶ 22).

"On or around August 24, 2015, [p]laintiff inquired of Bullock about the email." (Id. ¶ 23). "Plaintiff informed Bullock that he believed the email was received by him inadvertently and that he believed that telling the General Manager, Fulks, that he was hard to understand was discriminatory." (Id. ¶ 23). According to plaintiff, "Bullock responded by insulting Plaintiff due to his accent." (Id. ¶ 24). Plaintiff thereafter reported the same to Fulks, and Fulks scheduled a meeting with plaintiff. (Id. ¶¶ 25-26). "Plaintiff also complained about his treatment by use of the company's 'hotline' phone number." (Id. ¶ 27).

On August 25, 2015, Plaintiff met with Fulks and other managers. According to plaintiff, "during the meeting, [p]laintiff was never given any opportunity to explain why he felt discriminated against and the need for a meeting." (Id. ¶ 29). Plaintiff "was informed by Fulks that 'at the request of the client,' he must be removed from the site." (Id. ¶ 30). "Plaintiff was informed he'd be moved to a site twenty-five minutes away, with a decrease in pay of $1.50 per hour." (Id. ¶ 31). "Plaintiff

thereafter contacted [defendant's] corporate office regarding his proposed removal and demotion."

(Id. ¶ 32).

On or around October 15, 2015, plaintiff filed a "Charge of Discrimination" with the EEOC. On or around August 15, 2017, the EEOC issued a "Determination" that there was reasonable cause to believe that the denial of the promotion to Shift Supervisor and subsequent removal from the company violated Title VII. On or around December 15, 2017, the EEOC issued a "Right-To-Sue letter" to plaintiff.

## COURT'S DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

        1.      Exhaustion

Defendant argues that plaintiff failed to exhaust administrative remedies because he failed to file his lawsuit within 90 days of receipt of his right to sue letter from EEOC.

Title VII provides that "within [90] days after the giving of such notice [of right to sue] a civil action may be brought against the respondent named in the charge" based upon "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(1). "Title VII's timely filing requirements are not jurisdictional." Davis v. N. Carolina Dep't of Correction, 48 F.3d 134, 140 (4th Cir. 1995) (emphasis added) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) ). Rather, they are requirements "that, like a statute of limitations, [are] subject to waiver, estoppel, and equitable tolling." Chacko v. Patuxent Inst., 429 F.3d 505, 513 n.5 (4th Cir. 2005) (quoting Zipes, 455 U.S. at 393). By contrast, failure to exhaust administrative remedies entirely for an alleged discriminatory act deprives the court of subject matter jurisdiction over a claim based upon such act. See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300-01 n. 2 (4th Cir. 2009); Davis, 48 F.3d at 140.

Defendant contends that plaintiff's lawsuit is not timely because plaintiff filed his complaint in state court on April 4, 2018, more than 90 days after December 15, 2107, the date of plaintiff's right to sue letter. Defendant, however, is using the incorrect date for commencement of suit in state court. As noted, Title VII provides that "a civil action may <u>be brought</u> against the respondent" within 90 days of the right to suit letter. 42 U.S.C. § 2000e-5(f)(1) (emphasis added). Pursuant to the North Carolina Rules of Civil Procedure:

> A civil action <u>may . . . be commenced by the issuance of a summons </u>when
> (1) A person makes application to the court stating the nature and purpose of his action and requesting permission to file his complaint within 20 days and
> (2) The court makes an order stating the nature and purpose of the action and granting the requested permission.

N.C. Rule of Civ. P. 3(a)(1)-(2) (emphasis added).

Plaintiff here commenced his action in Wake County Superior Court on March 15, 2018, by filing an "application and order extending time to file complaint" pursuant to Rule 3(a)(1) and (2). (DE 25-1 at 2). In accordance with that rule, the Wake County Superior Court entered an order stating the nature and purpose of plaintiff's action and granting permission to file the complaint on or before April 4, 2018. (<u>Id.</u>). The court issued summons that same day. (<u>Id.</u> at 3). Accordingly, plaintiff commenced his action under the North Carolina Rules of Civil Procedure on March 15, 2018, within the 90 day time period required by Title VII.

Defendant does not advance any argument addressing the date of commencement of a civil action under the North Carolina Rules of Civil Procedure. Although the Fourth Circuit has not addressed the date for commencement of an action under North Carolina law, every federal district court in North Carolina that has addressed this issue, including this court, previously has held that a civil action may be commenced for Title VII purposes by issuance of a summons in accordance

6

with North Carolina Rule of Civil Procedure 3. See, e.g., Parker v. Kelly Servs., Inc., No. 4:13-CV-111-FL, 2014 WL 886821, at *4 (E.D.N.C. Mar. 6, 2014) ("Under this method the action is commenced when a summons is issued."); Chandler v. W.B. Moore Co. of Charlotte, Inc., No. 3:18-CV-149, 2018 WL 1913588, at *2 (W.D.N.C. Apr. 23, 2018) (filing for extension of time and state court issuance of summons commences action for purposes of Title VII 90 day limitation period); Lassiter v. LabCorp Occupational Testing Servs., Inc., 337 F. Supp. 2d 746, 752 (M.D.N.C. 2004) (same).

Accordingly, defendant's motion to dismiss for failure to exhaust administrative remedies must be denied.

2.    Res Judicata

Defendant argues that the December 2016 action bars plaintiff's litigation of the instant action due to res judicata. Defendant relies upon a March 6, 2017, order by the Superior Court of Wake county dismissing with prejudice plaintiff's claims in the December 2016 action against defendant and non-party North Carolina Department of Commerce, Division of Employment Security. (Def's Mem. (DE 20) at 8 (citing Order, Sam-Kabba v. G4S Secure Solutions (USA) Inc., 16 CVS 15379 (Sup. Ct. Wake County, March 6, 2017)).

This court is "bound under the Full Faith and Credit statute, 28 U.S.C. § 1738, to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect in the federal action." Davenport v. N. Carolina Dep't of Transp., 3 F.3d 89, 93 (4th Cir. 1993). "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them." State ex rel. Tucker v. Frinzi, 344 N.C. 411, 413 (1996)

7

(quotations omitted). "For res judicata to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting res judicata and the party against whom res judicata is asserted were either parties or stand in privity with parties." Id. at 413-414 (quotations omitted). "It is well settled that a judgment is res judicata and bars a subsequent action between the same parties as to all matters actually litigated and determined therein and also as to all matters which properly could have been litigated and determined." State v. Burell, 256 N.C. 288, 298 (1962).

Here, the March 6, 2017, state court order in plaintiff's December 2016 action does not have preclusive res judicata effect in the instant action because plaintiff's Title VII and wrongful discharge claims were not claims that were "actually litigated and determined" nor "properly could have been litigated and determined" in the December 2016 action. Id. In particular, based upon the state court documents provided by defendant in support of its motion, to which the court takes judicial notice for purposes of the instant motion, plaintiff's December 2016 action was presented as a "Written Appeal" of "Higher Authority Decision No. 16(UI)3131," by an unspecified entity. The order of the Wake County Superior Court dismissing the December 2016 action did so on the basis of motions to dismiss "pursuant to N.C. Gen. Stat §§ 96-15(h) and (i) and Rules 12(b)(2), (4), (5) and (6) of the North Carolina Rules of Civil Procedure for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process and Plaintiff's failure to state a claim upon which relief can be granted." (Order (DE 20-3 at 2)). In so concluding, the state court order states: "The Higher Authority Decision No. 16(UI)3131 issued by the North Carolina Department of Commerce, Board of Review is final." (Id.).

Based upon this limited record of plaintiff's December 2016 action, as currently presented,

the state court order does not have preclusive effect in the instant matter for two reasons. First, plaintiff could not have brought a Title VII claim in the December 2016 action because he had not yet received a right to sue letter at that time. Second, state law limited the scope of claims and remedies, as confirmed by the state court order dismissing plaintiff's December 2016 action. In particular, North Carolina General Statute § 95-15(i), which the state court cites in its dismissal order, provides:

> In any judicial proceeding under this section, the findings of fact by the Division, if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

N.C. Gen. Stat. Ann. § 96-15(i). Plaintiff thus was not permitted a jury trial and the civil action was confined to one for judicial review of an administrative decision for determination of employment security benefits. See id.

The Fourth Circuit has held in analogous circumstances that a federal action is not barred by a prior North Carolina action for judicial review of an administrative agency. For example, in Davenport, the Fourth Circuit determined:

> the administrative proceeding that was invoked here is purely a creature of state statute, originating with base-line fact-finding by a government agency whose decision is subject then to only limited judicial review, while the [federal § 1983] action involves a full trial with the right to have factual issues resolved by a jury.

Davenport, 3 F.3d at 96. As such, the Fourth Circuit concluded "these procedural and substantive differences between the state administrative claim and the [federal] claims alleged by plaintiff would cause them to be treated as different claims for res judicata purposes by the North Carolina courts." Id. at 97. In Whitaker v. Nash-Rocky Mount Bd. of Educ., 474 F. App'x 912, 913-14 (4th Cir. 2012), the Fourth Circuit applied the same rule to a Title VII action brought after a state court judgment upon review of administrative employment action:

9

even if [plaintiff] could have raised his current federal law claims before the superior court, he would have done so without a right to discovery, the ability to present relevant evidence, or the privilege of having his case heard by a jury. Moreover, due to the procedural incongruities of adjudicating the appeal of a state agency's administrative decision alongside newly raised federal law claims, it is unlikely that the superior court would or could have allowed [plaintiff] to join new, federal claims with his appeal.

Id. at 914.  The same reasoning applies here.

Defendant does not cite or address Whitaker or Davenport, much less attempt to distinguish or discount these holdings directly on point here.  Nor does defendant confront any of these issues raised by plaintiff in his response, where defendant did not file any reply.  The sole case cited by defendant on the res judicata issue of claim identity is an unpublished district court case: Davis v. Walker, 1998 U.S. Dist. LEXIS 4848, *8-9, No. 7:97-CV-152-BO (E.D.N.C., Jan. 29, 1998).  Davis, however, is wholly inapposite, where it is a magistrate judge memorandum and recommendation that merely outlines federal law of res judicata, in a case where the plaintiff had "filed a number of state and federal lawsuits relating to his criminal conviction" that was subject also of his federal claim. Id.  Much more instructive to the instant matter is this court's decision in Whitaker v. Nash-Rocky Mount Bd. of Educ., 833 F. Supp. 2d 520, 523 (E.D.N.C. 2011), where this court dismissed a Title VII action upon res judicata grounds, but where, as noted above, the Fourth Circuit vacated the district court decision as an incorrect application of res judicata. See Whitaker, 474 F. App'x at 914.

In sum, defendant has failed to justify dismissal of the instant action on res judicata grounds. Therefore, defendant's motion to dismiss on this basis must be denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 19) is DENIED.  Initial order regarding planning and scheduling in this case will follow.

SO ORDERED, this the 1st day of March, 2019.


LOUISE W. FLANAGAN
United States District Judge